**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES BUSHROD JACKSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of | : | |
| Social Security | : | NO. 23-626 |

**O P I N I O N**

SCOTT W. REID                                                       DATE:  July 20, 2023
UNITED STATES MAGISTRATE JUDGE

James Bushrod Jackson brought this action under 42 U.S.C. § 405(g) to obtain review of

the decision of the Commissioner of Social Security denying his claim for Disability Insurance

Benefits ("DIB").  He has filed a Request for Review to which the Commissioner has responded.

As explained below, I conclude that the Request for Review should be denied and judgment

entered in favor of the Commissioner.

  I.      *Factual and Procedural Background*

Jackson was born on April 30, 1958.[1]  Record at 234.  He completed high school.

Record at 254.  For the fifteen years preceding his application for benefits, Jackson worked as a

cashier in a SEPTA station.  *Id*.

On October 8, 2020, Jackson applied for DIB, alleging disability since August 1, 2020, as

result of impairments in his neck and back.  Record at 234, 253.  His application was denied

initially and upon reconsideration.  Record at 89, 103.  Jackson then requested a hearing *de novo*

before an Administrative Law Judge ("ALJ").  Record at 113.

---

[1] Jackson's application for benefits states that he was born in 1968.  Record at 234.  However, this is clearly a
misprint for 1958, since he was 63 at the time of his hearing before the ALJ, on December 23, 2021.  Record at 36.

A hearing was held in this case on December 23, 2021.  Record at 32.  On January 12, 2022, the ALJ issued a written decision denying benefits.  Record at 15.  The Appeals Council denied Littlejohn's request for review on January 4, 2023, permitting the ALJ's decision to stand as the final decision of the Commissioner of Social Security.  Record at 1.  Jackson then filed this action.

II.    *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision.  *Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii)  At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id.* The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id.*

III.   *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ determined that Jackson suffered from the severe impairments of moderate chronic obstructive pulmonary disease, degenerative disc disease of the cervical and lumbar spine, and obesity. Record at 17. She also found him to suffer from non-severe impairments, including hypertension, gastritis, diabetes, chest pain which was likely angina, hyperlipidemia, lung nodules, sleep apnea and coronary artery disease. Record at 18. The ALJ added:

Dr. Kramer assessed the claimant on August 16, 2021 to have rule-out carpal tunnel syndrome. He assessed the claimant on November 3, 2021 to have probable carpal tunnel syndrome. He mentioned in a November 3, 2021 opinion that the claimant had carpal tunnel syndrome bilateral. However, there is no electromyogram (EMG) to confirm this in the file, and there is no objective medical evidence to support a carpal tunnel syndrome diagnosis. Therefore, carpal tunnel syndrome is found to be a non-medically determinable impairment. Any symptoms not supported by a medically determinable impairment cannot be considered to cause any functional restrictions per SSR 96-4p.

Record at 18. (Internal citations omitted).

The ALJ concluded that Jackson retained the RFC to perform light work with the following limitations:  he could climb ramps or stairs only frequently (as opposed to constantly); could climb ladders, ropes or scaffolds only occasionally; he could frequently (but not constantly) stoop, crouch, kneel, and crawl; and he needed to avoid concentrated exposure to extreme heat or cold, wetness or humidity, irritants such as fumes, odors, dust and gases, poorly ventilated areas, and exposure to chemicals.  Record at 20.

In reliance upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Jackson could return to his former work as a cashier (identified in the Dictionary of Occupational Titles as "cashier II") as it is usually performed in the national economy. Record at 26.  She decided, therefore, that he was not disabled.  Record at 26-7.

Jackson argues that the ALJ did not account for the "full limiting effects" of his impairments in her RFC assessment.  Among other things, he maintains that the evidence supported the findings of his general practitioner, Dr. Larry Kramer, who opined that he had work-preclusive limitations.  He also argues that "The ALJ's 'credibility' assessment is generally defective because of the above error and is specifically so because of her failure to consider Plaintiff's stellar work history in her assessment."  Plaintiff's Brief in Support of Request for Review at 14.

IV.     *Discussion*

    A.     *The Limiting Effects of Jackson's Impairments*

        1.     *Dr. Kramer's Report*

Jackson's primary care physician, Larry Kramer, M.D., submitted a two-page Medical Source statement dated November 3, 2021.  Record at 629-630.  In it, Dr. Kramer checked off that Jackson could sit for a maximum of two hours in an 8-hour workday, and stand or walk for only one more hour.  Record at 629.  He could lift less than ten pounds, and could never lift more than that.  *Id*.  He could rarely reach, handle, finger or feel.  *Id*.  Further, he would occasionally be distracted from performing "even simple work tasks" by his pain or other symptoms, and he would be absent twice per month.  Record at 630.

The ALJ found Dr. Kramer's opinions not to be persuasive.  Record at 26.  She described them as inconsistent with the other evidence of record, with Dr. Kramer's own treatment notes, and with Jackson's own description of his daily activities.  Jackson argues that the ALJ erred in this regard.

In fact, the ALJ was correct in noting that Dr. Kramer's opinions were grossly inconsistent with the other medical opinions.  Notably, David B. Klebanoff, M.D., an independent consulting physician, examined Jackson on January 13, 2021.  Record at 362. Initially, Jackson told Dr. Klebanoff that he began experiencing neck pain when he started to work as a cashier, because the booth in which he worked was too short to accommodate his height of 6' 5", and he had to "hunch down and bend his neck forward" to reach his cash register.  Record at 363.  Jackson reported that he still had neck stiffness, but that there had "been great improvement" in the condition of his neck since his retirement.  *Id*.  At that time, Jackson was not taking any medication for neck pain.  *Id*.

Dr. Klebanoff described Jackson as having a normal gait and stance, with "a very minimal hunching forward at the waist" of "perhaps 5 degrees." Record at 364. Jackson could walk on his heels and on his toes "without difficulty" and could squat fully. *Id*. He used no assistive device, could rise from a chair with no difficulty, and needed no help to get on or off the examination table. *Id*. Upon examination, Jackson's joints were stable and nontender, and he had full strength in both his arms and legs, with no muscle atrophy. Record at 365. No neurologic abnormalities were noted. *Id*. Dr. Klebanoff also noted: "hand and finger dexterity intact. Grip strength 5/5 bilaterally. He demonstrates ability to zip, button, and tie." *Id*. He concluded that Jackson suffered from "intermittent low pack pain" and "neck stiffness with congenital vertebral malformation," and gave him a "good" prognosis. Record at 366.

Based on his examination findings, Dr. Klebanoff indicated that Jackson could continuously lift up to ten pounds, and occasionally lift up to 100. Record at 367. He could sit for eight hours at one time, and could stand or walk for up to two hours at a time. Record at 368. He could continuously reach, handle, finger, feel, push or pull with the right hand, and do the same with the left hand, except that he could only reach overhead frequently. Record at 369. Dr. Klebanoff also indicated that Jackson could occasionally crouch, but could frequently climb stairs, ramps, ladders or scaffolds; stoop, kneel, or crawl. Record at 370. He could continuously balance. *Id*. Further, he could frequently be exposed to humidity, pulmonary irritants, vibrations, and temperature extremes. Record at 371.

The ALJ found Dr. Klebanoff's opinions to be "partially persuasive," although she disagreed with him in that she found Jackson to be limited to light work, because of his back and neck pain, and shortness of breath. Record at 25.

Roland Gutierrez, M.D., a non-examining agency physician, opined on February 3, 2021, that Jackson could perform light work with frequent (again, as opposed to unlimited) postural activities, such as stooping, kneeling, and climbing stairs.  Record at 66-7.  He did not find Jackson to have manipulative limitations.  Record at 68.  Similarly, Michael Francis Lombard, M.D., who reviewed Jackson's medical records on reconsideration, found Jackson could perform light work with the limitations indicated by Dr. Gutierrez.  Record at 81-85.  The ALJ found the opinions of Drs. Gutierrez and Lombard to be partially persuasive, although she added further restrictions pertaining to Jackson's respiratory impairment, spinal disorders, and obesity.  Record at 25.

As for Dr. Kramer's own treatment notes, they certainly contain mentions of lower back and neck pain.  Record at 667 (October 16, 2018 ("positive for neck pain"); 673 (September 3, 2019) (back pain "still quite severe"); 679 (August 12, 2019).  MRIs of the lumber and cervical spine performed on November 6, 2019, showed multiple abnormalities.  Record at 700, 703.

Nevertheless, physical therapy notes dated between autumn, 2019, and February 13, 2020, show great improvement.  On October 31, 2019, Jackson was discharged from physical therapy for his lumbar pain after twelve visits.  Record at 455.  At that time, he reported lumbar pain of 0-1 out of 10.  Record at 452.  Jackson continued to attend physical therapy for his cervical spine (i.e., neck pain), with his notes stating his date of onset as November 18, 2018.  Record at 426-451.  Until December 23, 2019, Jackson described his neck pain as 7/10 at worst.  Record at 426-448.  From December 27, 2019 through February 12, 2020, however, he described it as only 2/10.  Record at 382-422.  Upon discharge on February 13, 2020, he reported that his cervical pain was 0/10, although he still had stiffness.  Record at 378.

Further, as the Commissioner has pointed out, all of this took place prior to Jackson's alleged disability date of August 1, 2020.  There are no notes from Dr. Kramer dated between October 10, 2019, and June 9, 2021.  Record at 657, 661.  Apparently, Jackson saw Dr. Kramer on three occasions in the summer of 2021.  Record at 637-760.  The final note from Dr. Kramer is dated November 3, 2021, like his Medical Source Statement.  Record at 632.  It reports:  "Pt. is applying for disability has severe neck pain and weakness and numbness in hands and emg ordered to r/o [i.e., "rule out"] cts [presumable carpal tunnel syndrome]."  *Id*.  Nevertheless, as the ALJ noted, there are no EMG results in the record.

As the ALJ also noted, Jackson described a fairly broad range of activities of daily living. In the Function Report he completed on November 24, 2020, as part of his application for benefits, he indicated that he could dress and bathe independently; prepare his own cooked meals; and do his own laundry and housecleaning, although slowly.  Record at 263-4.  He left the house at least once per day, was capable of going out by himself, and drove his own car four or five times per week.  Record at 41, 265.  He shopped for food and gas weekly, and handled his own finances.  *Id*.  Almost daily, he read, listened to the radio, and/or played cards.  Record at 266.  He met with friends to play cards, and "chatted" with them on the phone every day.  *Id*.  He did not go out more because, at the time he completed his report, "COVID [had] stopped a lot of things."  *Id*.  Jackson also described himself as able to walk two blocks without resting.  Record at 267.  He took only Motrin, though he noted he had taken Tramadol in the past.  Record at 269.

Jackson described his activities of daily living in similar terms to Dr. Klebanoff on January 1, 2021:

> He lives alone.  He drives.  He retired in 6/20.  He performs cooking, cleaning, laundry, and shopping.  He can shower and bathe himself, and dress himself.  He could perform child care.  He will spend time watching TV, listening to the radio, reading, and socializing with friends.  He goes out and visits family.

Record at 364.  At the hearing before the ALJ, Jackson testified that he could only sit for 20 minutes without shifting his weight, but he also testified that he travelled for six hours as a passenger in a car in July, 2021, to visit family in Virginia.  Record at 39, 42.

Clearly, the ALJ was correct in describing Dr. Kramer's statement as inconsistent with the other medical evidence of record and with Jackson's descriptions of his daily activities.  The ALJ need only include in an RFC assessment those limitations she finds to be supported by the record.  *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004).  In this case, therefore, the ALJ was justified in declining to include in her RFC assessment all of the functional limitations described by Dr. Kramer.

2.    *Factors Relied Upon by the ALJ*

Jackson also argues that the ALJ erred in considering as part of her RFC analysis his daily activities, pain-free days, lack of surgery since the 1980s, the fact that his pain was non-radiating, and the fact that some treatment notes included observations of a normal range of motion.

An unreasonably strong reliance on any single one of those factors might be erroneous.  *See*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 40 at n.5 (3d Cir. 2001) ("Sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity").  In this case, however, I agree with the Commissioner that the ALJ appropriately considered each of the factors in the context of a broad discussion of all the evidence.  Indeed, not only are ALJs

9

permitted to consider a claimant's daily activities, the location, duration, and frequency of his pain, and the type of treatment he received in evaluating his symptoms, they are directed by the regulations to do so.  20 C.F.R. § 404.1529(c)(2) and (3); SSR 16-3p.

      B.     *Jackson's Work History*

Although Jackson invites us to assess the ALJ's "credibility finding," he admits that ALJs have not been permitted to make credibility findings since 2017.  *Plaintiff's Brief* at 4, n.4; *and see* SSR 16-3p ("We are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term.  In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character").  Instead, the ALJ must determine whether a claimant's representations are consistent with the other evidence.   20 C.F.R. § 404. 1529(c)(3).

This being the case, it is not clear that an ALJ is even permitted to conclude that a claimant is telling the truth about his symptoms on the basis that he has a strong work history. "Information about [a claimant's] prior work record" can still be considered, but only as an "indicator of the intensity and persistence" of the claimant's symptoms.  20 C.F.R. § 404. 1529(c)(3).  In this context, the fact that Jackson was able to continue working until he qualified for retirement from SEPTA is not particularly supportive of his claim to suffer from disabling symptoms, although it does not in itself – of course – disprove them.  Thus, Jackson has not shown error on the part of the ALJ in this respect.

*V.     Conclusion*

    In accordance with the above discussion, I conclude that the Plaintiff's Request for

Review should be DENIED, and judgment entered in favor of the Commissioner.

                                        BY THE COURT:


                                        */s/ Scott W. Reid*
                                        _____
                                        SCOTT W. REID
                                        UNITED STATES MAGISTRATE JUDGE